**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
Danville Division

| | | |
|---|---|---|
| **JOHN ARRINGTON,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13-cv-00011 |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner | ) | |
| Social Security Administration, | ) | By:    Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff John Arrington asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. On appeal, Arrington objects primarily to the Administrative Law Judge's ("ALJ") conclusion that his anxiety disorder was a "non-severe" mental impairment. This Court has authority to decide Arrington's case under 42 U.S.C. §§ 405(g), 1383(c)(3), and his case is before me by referral under 28 U.S.C. § 636(b)(1)(b). (*See* ECF No. 17.) Both parties have moved for summary judgment and filed briefs in support. (ECF Nos. 12, 13, 14, 15.) After carefully reviewing the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence and remand is necessary.

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role,

however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if " 'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.' " *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in

sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Arrington protectively filed for DIB and SSI on April 30, 2010, alleging disability beginning July 1, 2009. (R. 170.) At that time he was 40 years old and had 15 years of experience working as a carpenter and truck driver. (*See* R. 165, 170.) Arrington said that he could no longer work due to anxiety, depression, panic attacks, cardiovascular disease, diabetes, hypertension, and pancreatitis. (*See* R. 164.) A state agency twice denied his application. (R. 72–75.)

On April 18, 2011, Arrington appeared with counsel at an administrative hearing in Danville, Virginia. (R. 34, 36.) He testified as to his physical and mental symptoms and the limits those symptoms had on his ability to perform work-related tasks. (*See generally* R. 44–62.) A Vocational Expert ("VE") also testified as to the type of jobs Arrington could perform given his age, education, work history, and limitations. (*See* R. 62–71.) In a written decision dated May 13, 2011, the ALJ found that Arrington was not disabled. (R. 16.) He denied Arrington's application at Step Five. (*See generally* R. 21–29.)

At Step One, the ALJ found that Arrington had not worked since July 1, 2009. (R. 21.) At Step Two, he found that Arrington suffered from severe diabetes mellitus, degenerative disc and

joint disease, and obesity. (*Id.*) The ALJ also found that Arrington's anxiety disorder was a "non-severe" impairment because it did not significantly limit his ability to perform basic mental work activities. (R. 21–22.) At Step Three, the ALJ concluded that Arrington did not have a severe impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.)

Before reaching Step Four, the ALJ determined that Arrington had the residual functional capacity ("RFC")[1] to perform sedentary work involving "simple, routine, and repetitive tasks" in a job that offered a "sit/stand option" and allowed workers to be off-task for up to five percent of the workday in addition to customary breaks. (R. 24.) At Step Four, the ALJ found that Arrington's RFC kept him from returning to his past jobs as a carpenter and truck driver. (R. 27.)

At Step Five, the ALJ concluded that Arrington could perform some "unskilled and sedentary occupations," including telephone-information clerk, charge-account clerk, and surveillance-system monitor. (R. 28.) The VE mentioned those occupations in response to the ALJ's question about jobs that a person matching Arrington's age, education, and work experience might transition to if he: (1) could perform sedentary work involving simple, routine, and repetitive tasks; (2) could not walk or stand for more than four hours a day; (3) could not sit for more than six hours in an eight-hour day; and (4) might spend up to 13 percent of his normal work time off-task. (*See* R. 64–66.) The ALJ found the VE's testimony consistent with the *Dictionary of Occupational Titles* and concluded that all three jobs existed in significant numbers in the national economy. (R. 28.) Thus, he found Arrington was not disabled between July 1, 2009, and May 13, 2011. (*Id.*)

---

[1] "RFC" is an applicant's maximum "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite his or her limitations. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). The RFC reflects the "total limiting effects of all [the applicant's] impairments, even those that are not severe." 20 C.F.R. §§ 404.1545(e), 416.945(e).

Arrington timely filed his request for review with the Appeals Council. (*See* R. 14.) On May 8, 2012, Arrington informed the Appeals Council that he "was found disabled as of May 14, 2011, in a subsequent claim."[2] (R. 285.) He also asked the Appeals Council to consider ten additional exhibits related to his anxiety disorder. (*See* R. 288–89; *see also* R. 4.) The Appeals Council considered the award and the new exhibits, but found that they did "not provide a basis for changing" the ALJ's decision. (R. 2.) This appeal followed.

## III. Discussion

Arrington argues that the ALJ erred at Step Two when he concluded that Arrington's anxiety disorder was a "non-severe" mental impairment. (Pl. Br. 8.) He also argues that this error was not harmless because the ALJ did not expressly consider how Arrington's mental impairment, even if "non-severe," limited his ability to work. (*See* Pl. Br. 12, 14–15.)

I agree that the ALJ's severity analysis is not supported by substantial evidence in the current record, which includes new evidence that was not before the ALJ. Although the ALJ did not mention Arrington's anxiety disorder after Step Two, he later found that Arrington had two limitations typical of applicants with mental impairments. In his RFC determination, the ALJ concluded that Arrington could perform only "simple, routine, and repetitive tasks," and that he might be off task for up to five percent of the day. These limitations appear inconsistent with the ALJ's earlier finding that Arrington's "non-severe" mental impairment had "no" limitation whatsoever on his concentration, persistence, or pace. (R. 22.) But the ALJ did not explain the basis for incorporating those limitations into his RFC determination. (*See generally* R. 24–28.) Without that explanation, I cannot determine whether the ALJ adequately accounted for Arrington's mental limitations. Accordingly, I also find that substantial evidence does not

---

[2] The record contains no information about the basis for the award of benefits beyond the fact that it was granted sometime between May 13, 2011, and May 8, 2012. (R. 285.)

support the Commissioner's final decision that Arrington was not disabled between July 1, 2009, and May 13, 2011.

A.    *Severe Impairment*

For someone to be "disabled," he or she must have at least one "severe" medically determinable impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). The regulations state that an "impairment is *not* severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1521(a), 416.921(a) (emphasis added). "Basic" work activities are things like following simple instructions, responding appropriately to other people, and coping with changes in a routine work setting. *Id.* §§ 404.1521(b), 416.921(b).

An impairment should be labeled "not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere" with any applicant's work activities. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted); *see also Waller v. Colvin*, No. 6:12-cv-63, 2014 WL 1208048, at *7 (W.D. Va. Mar. 24, 2014) (citing *Evans*, 734 F.2d at 1014). This is not a difficult hurdle for the applicant to clear. *See Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999); *Carr v. Commissioner of Social Sec.*, No. 4:10CV00025, 2011 WL 1791647, at *9 (W.D. Va. May 11, 2011). Still, this Court must affirm the ALJ's severity finding if he applied the correct legal standard and if his conclusion is supported by substantial evidence in the record. *See Meyer*, 662 F.3d at 704.

ALJs use "a special technique" to evaluate the severity of an alleged mental impairment. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the ALJ evaluates the applicant's symptoms and medical records to determine whether he has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b), 416.920a(b). If he does, the ALJ then rates the applicant's resulting "degree of

functional limitation" in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[3] *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see also id*. pt. 404, subpt. P, app. 1 § 12.00(C). "Non-severe" mental impairments generally cause no more than "mild limitations" in the first three areas and no episodes of decompensation. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). As always, the ALJ must analyze all of the relevant evidence, articulate his rationale for crediting certain evidence, make required factual findings, and adequately explain the grounds for his conclusions at this stage. *See Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000).

     *1.    Evidence of Arrington's Anxiety Disorder in the Original Record*

Arrington testified that he experienced his first panic attack in 1999. (R. 55.) When an attack hits, Arrington said that he cannot breathe, his heart races, and he has to "get away from people" until the sensation passes. (R. 56–57.) Arrington said that he experienced panic attacks "on a daily basis," and that his attacks can last for up to two hours. (R. 188, 56.) As of May 13, 2011, Arrington had for years treated his anxiety with Xanax, Celexa, Lexapro, and Valium. (*See* R. 306, 307, 310, 311–12, 315, 318, 321–22, 352–53, 376, 378, 380, 382, 390, 409, 415, 549–51, 553, 556–58, 560, 581–83, 584, 609, 616–17, 622–23, 625–27, 634–36.) Pharmacy records from April 2011 also document increasingly aggressive drug treatment after June 2010. (*See* R. 623, 625, 634, 635.) Shortly before the ALJ issued his decision, for example, Arrington was combining the maximum recommended daily doses of Lexapro (20 mg),[4] Celexa (40 mg),[5] and Xanax (4 mg).[6] (*See* R. 622–23, 625–26.)

---

[3] Limitations in the first three areas are measured on a five-point scale: none; mild; moderate; marked; or extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Limitations in the fourth area are measured by the number of episodes a person has experienced. *Id.*

[4] Lexapro (escitalopram) is used to treat major depressive disorder and generalized anxiety disorder in adults. The maximum recommended daily dose is 20 mg. *See* Forest Labs., *Highlights of Prescribing Information (Lexapro)*, http://www.frx.com/pi/lexapro_pi.pdf (rev. Dec. 2012).

Medical records indicate that Arrington has taken Xanax since 2001 or 2002. (*See* R. 558.) In late 2005, Arrington's primary care provider, Dr. Michael Arroyo, M.D., noted "anxiety" and continued Arrington on 1 mg Xanax three times daily. (R. 390.) In January 2008, Dr. Arroyo diagnosed Arrington with anxiety and continued prescribing Xanax at that time. (R. 309.) Dr. Arroyo switched Arrington from Xanax to 5 mg Valium[7] in November 2008, (R. 315) but switched back to Xanax one month later (R. 318). According to his treatment notes, Dr. Arroyo observed Arrington exhibit "mild anxiety" in January 2010. (R. 321.) In April 2010, Arrington began complaining of panic attacks to Dr. Arroyo, who noted "mild anxiety" and continued Arrington on Xanax. (R. 322.)

In June 2010, Dr. Vishal Patel, M.D., added 10 mg Lexapro to Arrington's regimen of Xanax. (*See* R. 584–85.) Dr. Patel also noted that Arrington appeared "nervous/anxious" during their next visit in August 2010. (R. 583.) At that visit, Dr. Patel discontinued Xanax, increased Lexapro to 20 mg daily, referred Arrington to a psychiatrist, and instructed Arrington to return in three months. (*See* R. 582–83, 585–86.) But Arrington returned six weeks later complaining of increased anxiety and panic attacks. (*See* R. 591.) In September 2010, Dr. Patel observed that Arrington exhibited "anxiety," and noted that he was waiting for a psychiatric evaluation. (R. 593.) Medical records indicate that Dr. Patel restarted 1 mg Xanax three times daily around the same time. (*See* R. 609.)

---

[5] Celexa (citalopram hydrobromide) is used to treat depression. The manufacturer discourages doses above 40 mg per day. *See* Forest Labs., *Celexa (Citalopram Hydrobromide) Proposed Labeling Text*, http://www.accessdata.fda.gov/drugsatfda_docs/label/2009/020822s037,021046s015lbl.pdf (rev. Jan. 2009).

[6] Xanax (alprazolam) is used to treat anxiety and panic disorders. The maximum daily dose is 4 mg, to be given in divided doses. *See* Pfizer, *Xanax-Alprazolam Tablet*, http://labeling.pfizer.com/ShowLabeling.aspx?id=547 (rev. Sept. 2013).

[7] Valium (diazepam) is used to treat anxiety disorders. The usual dose for adults is 2 mg to 10 mg, two to four times per day. *See* Roache, *Valium® Brand of Diazepam Tablets*, http://www.accessdata.fda.gov/drugsatfda_docs/label/2008/013253s083lbl.pdf (rev. Jan. 2008).

Arrington first saw a psychiatrist, Dr. Keshavpal Reddy, M.D., on November 1, 2010. (*See* R. 541.) Dr. Reddy's notes from that visit document Arrington's current anti-anxiety medications (Xanax and Lexapro) and complaints of panic attacks. (R. 560.) On December 30, 2010, Arrington called Dr. Reddy's office to report that the Xanax was "not strong enough anymore." (R. 558.) Arrington returned to Dr. Reddy's office on January 31, 2011. (R. 557.) Dr. Reddy's treatment notes from that visit document increased dosage of Xanax, but the new amount is illegible. (*See id.*) Pharmacy records indicate that Dr. Reddy increased Arrington's Xanax to 1 mg four times daily. (*See* R. 622.) Arrington next visited Dr. Reddy on March 4, 2011, at which point he reported experiencing "panic daily." (R. 556.) Arrington also saw Dr. Reddy on March 28, 2011 (R. 541), but treatment notes from that visit seem to be missing from the record. Dr. Reddy restarted Arrington on 40 mg Celexa in March or April 2011. (*See* R. 556, 623, 625.)

Dr. Reddy completed his first Psychiatric/Psychological Impairment Questionnaire on March 28, 2011. (*See* R. 541–46.) He diagnosed Arrington with "panic disorder without agoraphobia," and noted that Arrington's prognosis was "guarded." (R. 541.) Dr. Reddy identified several "positive clinical findings" supporting that diagnosis, including: (1) poor memory; (2) mood disturbance; (3) recurrent panic attacks; (4) social withdrawal or isolation; and (5) hostility and irritability. (R. 542.) However, Dr. Reddy did not identify any "laboratory [or] diagnostic test results" that demonstrated or supported his clinical findings. (R. 542.)

Dr. Reddy also noted that Arrington's Global Assessment of Functioning ("GAF") score ranged from 43 to 48 during the past year. (R. 541.) A GAF score "reflects the clinician's judgment of the individual's overall level of functioning" given the person's mental state. Am. Psych. Assoc., *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2007).

Scores between 41 and 50 indicate "serious symptoms" or "any serious impairment" in social or occupational functioning. *Id.* at 35. Consistent with that judgment, Dr. Reddy opined that Arrington was "moderately limited" in his ability to: (1) understand and remember one- or two-step instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) sustain his ordinary routine without supervision; (5) complete a normal workweek without interruptions from his psychological symptoms; (6) accept instructions from and respond appropriately to criticism from supervisors; (7) maintain socially appropriate behavior; and (8) respond appropriately to changes in the workplace. (R. 545–46.)

Dr. Reddy also opined that Arrington was "markedly limited" in his ability to: (1) understand and remember detailed instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (3) work in coordination with or near others without being distracted by them; and (4) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) Dr. Reddy did not identify any areas in which he thought Arrington had "no limitation[s]." (*Id.*)

2.     *The ALJ's Severity Analysis*

The ALJ concluded that Arrington's anxiety disorder was a "non-severe" medically determinable impairment because it had at most a "minimal limitation" on Arrington's ability to perform basic mental work activities. (R. 22.) The ALJ gave three reasons for that conclusion: (1) Arrington's "routine and conservative" mental-health treatment; (2) Dr. Reddy's opinions deserved "little weight"; and (3) Arrington's mental impairment caused "no" functional limitations or episodes of decompensation. (*Id.*)

The ALJ first found that Arrington's mental-health treatment had been "routine and conservative in nature, consisting primarily of modest treatment by his primary care physician,

Dr. Arroyo." (*Id.*) The ALJ acknowledged that Arrington sought psychiatric help, but concluded that Dr. Reddy's treatment had been "modest and conservative in nature." (*Id.*) He did not explain why regularly visiting a psychiatrist and combining the maximum recommended doses of three anti-anxiety medications constituted "modest and conservative" treatment. (*See id.*)

The ALJ also briefly addressed Dr. Reddy's medical opinions. Here the ALJ was supposed to consider certain factors in determining what weight to give those opinions, such as the existence of an ongoing doctor-patient relationship, the weight of the clinical evidence supporting the opinions, Dr. Reddy's specialty, and the opinions' consistency with the record. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). The ALJ gave Dr. Reddy's opinions "little weight" because he found them "unsupported by his [own] treatment records or by the longitudinal evidence of record." (R. 22.) But the ALJ did not explain that finding or identify any evidence that was inconsistent with Dr. Reddy's opinions. (*See id.*) Instead, the ALJ simply said that Dr. Reddy's "limited treatment" was "not supportive of a treating relationship." (*Id.*)

The ALJ then rated the severity of Arrington's anxiety disorder using the technique outlined in 20 C.F.R. §§ 404.1520a and 416.920a. (*See* R. 22.) His task here was to "consider all relevant evidence to obtain a longitudinal picture" of Arrington's functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

"Activities of daily living" measures the applicant's ability to complete tasks like grooming, cooking, cleaning, shopping, and paying bills. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1). The ALJ concluded that Arrington had "no limitation" in this area because he could care for himself and for his children, prepare meals, wash clothes, clean his home, and drive. (R. 22.) The ALJ did not cite the record to support his findings. (*See id.*)

"Social functioning" measures the applicant's ability to interact appropriately with others. *See id.* § 12.00(C)(2). The ALJ concluded that Arrington had "no limitation" in this area because the ALJ thought that Arrington was "friendly and garrulous" during his administrative hearing. (R. 22.) To support that finding, the ALJ cited one consultative examiner's impression that Arrington was "pleasant and cooperative" during one visit in July 2010. (*Id.*) He also noted that Arrington goes to Wal-Mart once a week and visits his father regularly. (*Id.*)

"Concentration, persistence, or pace" measures the applicant's ability to focus long enough to complete common on-the-job tasks during a normal workday. *See id.* § 12.00(C)(3). The ALJ concluded Arrington had "no limitation" in this area because he had "consistently been described as alert and oriented in all spheres." (*Id.*) To support that finding, the ALJ cited one consultative examiner's impression of Arrington's mental status during one visit in July 2010. (*See id.*) The ALJ also found that Arrington "acknowledged hobbies including building computers." (*Id.*)  In fact, Arrington testified that his hobbies "used to" include and building computers. (R. 55.) By April 2011, Arrington said he had trouble paying attention. (R. 57.)

"Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties" in the first three functional areas. *Id.* § 12.00(C)(4). An episode of decompensation can be inferred from medical records showing "significant" changes in medication. *Id.* The ALJ concluded that Arrington had "experienced no episodes of decompensation, which have been of extended duration or otherwise." (R. 22.) To support that finding, the ALJ noted that Arrington "consulted a psychiatrist, Dr. Reddy, only a few times since November 2010." (*Id.*)

3.    *Analysis*

Given the relatively low bar Arrington had to clear here, I cannot conclude that substantial evidence supports the ALJ's conclusion that Arrington's' anxiety disorder was a "non-severe" impairment. First, Arrington had a diagnosed anxiety disorder, took several prescription anti-anxiety medications, was under a physician's care for many years, and sought psychiatric help on more than one occasion. (R. 309, 321–22, 591, 603.) *See Lawson v. Astrue*, No. 7:06-cv-747, 2007 WL 4268913, at *5 (W.D. Va. Nov. 30, 2007) (finding substantial evidence did not support ALJ's severity finding where applicant had a "documented history" of anxiety and had been treated with medication "over a period of years"); *Wright v. Comm'r of Soc. Sec.*, No. 4:11-cv-4, 2011 WL 3841611, at *2 (W.D. Va. Aug. 24, 2011) (finding substantial evidence did not support ALJ's severity finding where record was "replete with evidence irrefutably demonstrating plaintiff suffered [from] and was being treated for anxiety and depression" that caused functional limitations), *adopted by* 2011 WL 4043434 (W.D. Va. Sept. 9, 2011) (Kiser, J.).

Drs. Arroyo and Patel also clearly noted their own observations that Arrington exhibited anxiety at office visits throughout 2010. (*See, e.g.*, R. 321, 322, 593.) Dr. Reddy's treatment notes are of somewhat limited evidentiary value, as the few lines that are legible document little more than medication names and Arrington's complaints of anxiety. But they at least show that a specialist, not a primary care provider, managed Arrington's anti-anxiety prescriptions for several months before the ALJ's decision. (*See, e.g.*, R. 560, 557, 556.)

The Commissioner attempts to justify the ALJ's severity finding by arguing that Arrington worked for several years after starting Xanax. (*See* Def. Br. 1, 17.) While that is true, the ALJ did not cite Arrington's work history as a reason for concluding that his anxiety disorder

was a "non-severe" impairment. (*See* R. 26–27.) Furthermore, Arrington can claim disability based on a medical condition he had while working if he demonstrates "significant deterioration" after his alleged onset date. *See McDilda v. Barnhart*, No. 6:04-cv-36, 2005 WL 831253, at *5 (W.D. Va. Apr. 8, 2005) (citing *Craig v. Chater*, 76 F.3d 585, 596 n.7 (4th Cir. 1996)).

The record contains compelling evidence that Arrington's mental health started to deteriorate in the spring of 2010. For example, Drs. Arroyo, Patel, and Reddy each documented Arrington's complaints of recurring panic attacks between April 2010 and March 2011. (*See e.g.*, R. 322, 560, 583, 591, 593.) Pharmacy records also indicate increasingly aggressive drug treatment after June 2010. (R. 623, 625, 634, 635.) By the spring of 2011, for example, it appears that Dr. Reddy had ordered Arrington to combine the maximum recommended daily doses of Lexapro (20 mg), Celexa (40 mg), and Xanax (4 mg) to manage his anxiety. (*See* R. 556, 622–23, 625–26.)

Arrington argues that the ALJ erred in weighing Dr. Reddy's March 2011 opinions. (*See* Pl. Br. 10–11.) I agree that the ALJ should not have dismissed Dr. Reddy's opinions because he thought that the psychiatrist's "limited treatment" was "not supportive of a treating relationship." (R. 22.) *See Lawson*, 2007 WL 4268913, at *4 (noting that an examining physician's "opinion must be considered and properly weighed" even though she "did not have a significant treating relationship" with the applicant); 20 C.F.R. §§ 404.1527(c), 416.927(c). That said, Dr. Reddy's March 2011 opinions, although based on clinical findings, were not supported by diagnostic or laboratory tests. (*See* R. 542.) Additionally, two pages of Dr. Reddy's RFC assessment are missing from the record. (*See* R. 545–46.)

Still, Arrington's ongoing psychiatric treatment, his increased anti-anxiety medications, and Dr. Reddy's RFC assessment are compelling evidence that Arrington's mental condition

"actually has deteriorated significantly" since he last worked. *Craig*, 76 F.3d at 707. The ALJ's severity analysis simply does not take that evidence into account. *Cf. Robinson v. Colvin*, No. 7:12-cv-272, 2014 WL 1276507, at *4 (W.D. Va. Mar. 27, 2014) (ordering remand where the ALJ did not address evidence that could have yielded a different result at Step Three).

       4.      *New and Material Evidence of Arrington's Anxiety Disorder*

Furthermore, the current record contains new evidence that undermines the ALJ's reasons for concluding that Arrington's anxiety disorder was a "non-severe" impairment. Arrington submitted to the Appeals Council ten exhibits addressing his deteriorating mental condition. (*See* R. 4.) The Appeals Council considered those exhibits, but determined that they did "not provide a basis for changing" the ALJ's decision. (R. 2.) This Court must examine the whole record, including any "new and material evidence" that was considered by the Appeals Council, to determine whether substantial evidence supports the ALJ's findings and conclusions. *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). The evidence must relate to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). Such evidence is "new . . . if it is not cumulative or duplicative[,]" and it is "material if there is a reasonable probability that [it] would have changed the outcome" in the applicant's case. *Id.*

Consideration of new evidence presents a difficult task for the Court because I must review the ALJ's decision in light of this evidence that he had no opportunity to evaluate or explain. *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999). The Court also must honor its obligation not to reweigh evidence or to resolve conflicting facts. *Davis*, 392 F. Supp. 2d at 751. The judges on this Court have maintained "that balance by reviewing the record as a whole to determine if the new evidence is contradictory . . . or calls into doubt any decision grounded in

the prior medical reports." *Dunn v. Colvin*, --- F. Supp. 2d ---, 2013 WL 5295675, at * 9 (W.D. Va. Sept. 19, 2013) (Moon, J.) (collecting cases). Remand is necessary where the new evidence meets either condition. *See id.* The Fourth Circuit has also ordered remand where new and material evidence fills an evidentiary gap, *Meyer*, 662 F.3d at 707, or "contradicts both the ALJ's findings and underlying reasoning" for concluding an applicant is not disabled, *Jackson v. Astrue*, 467 Fed. App'x 214, 218 (4th Cir. 2012).

Only one of Arrington's ten exhibits contains new evidence that could reasonably change the ALJ's severity analysis. That exhibit is an updated medical opinion form that Dr. Reddy submitted in July 2011. (R. 645–53.) This opinion fills a crucial evidentiary gap and contradicts the ALJ's reasons for concluding that Arrington's anxiety disorder was not a severe impairment before May 14, 2011. And, because the ALJ did not explain the basis for incorporating possible mental limitations into his final RFC determination, there is also a reasonable probability that Dr. Reddy's new opinion will change the outcome in Arrington's case. *See Wilkins*, 953 F.2d at 96.

Dr. Reddy submitted a second Psychiatry/Psychological Impairment Questionnaire on July 25, 2011. (*See* R. 645.) He diagnosed Arrington with "major depression and panic disorder," and noted again that his prognosis was "guarded." (*Id.*) Dr. Reddy identified several "positive clinical findings" supporting that diagnosis, including: (1) sleep disturbance; (2) mood disturbance; (3) emotional lability; (4) recurrent panic attacks; (5) psychomotor agitation or retardation; (6) difficulty thinking or concentrating; (7) social withdrawal or isolation; and (8) general persistent anxiety. (R. 646.) This time, Dr. Reddy also noted that his clinical findings were supported by "laboratory and diagnostic test results," including "regular medical . . . exams" between November 1, 2010, and July 25, 2011. (*Id*; *see also* R. 645.)

Once again, Dr. Reddy opined that his patient was "moderately limited" in his ability to: (1) remember locations and work-like procedures; (2) carry out detailed instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (4) sustain an ordinary routine without supervision; (5) interact appropriately with the general public; (6) get along with co-workers without distracting them or exhibiting behavioral extremes; (7) maintain socially appropriate behavior; and (8) respond appropriately to changes in the work setting. (R. 647–50.) He also opined that Arrington was "markedly limited" in his ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or near others without being distracted by them; (4) complete a normal workweek without interruptions from psychologically based symptoms; and (5) accept instructions and respond appropriately to criticism from supervisors. (R. 648–49.) Dr. Reddy thought Arrington had been so limited for two or three years before July 2011. (R. 652.)

This exhibit is new, or non-cumulative and non-duplicative, because it includes additional opinions on Arrington's anxiety disorder and resulting functional limitations during the period relevant to his disability application. Although generally consistent with his earlier opinions, Dr. Reddy's new opinion documents further mental decline between March and July 2011, a portion of which was during the period relevant to the ALJ's decision. (*Compare* R. 544–46 *with* R. 646–50.) This exhibit also includes for the first time a clear statement that Dr. Reddy's clinical findings are supported by "laboratory and diagnostic test results," including "regular medical . . . exams." (R. 646.)[8] And, because no pages are missing, this exhibit is the

---

[8] The record does not contain documentation of the laboratory and diagnostic tests or the medical exams performed by Dr. Reddy. On remand, any such documents would be helpful for the ALJ to assess what weight to give to Dr. Reddy's findings.

only complete RFC assessment in the record from a physician who personally examined Arrington. Dr. Reddy's March 2011 RFC assessment was missing two pages that according to the later form likely provided an opinion regarding the duration Arrington's impairment was expected to last and likely addressed Arrington's ability to adapt to changes in the workplace. (*See* R. 650–51.) Perhaps most importantly, Dr. Reddy's July 2011 opinion appears to be more strongly grounded in medical evidence than his March 2011 opinion that, although based on clinical findings, found less support in the record, given that his treatment notes primarily documented Arrington's subjective complaints. *See* 20 C.F.R. §§ 404.1528(b)–(c), 416.912(b)(1); *id.* pt. 404, subpt. P, app. 1 § 12.00(B), (D) (discussing medical evidence).

This exhibit is material because it provides additional support for the finding that Dr. Reddy had established a "treating" relationship with Arrington. The ALJ found that Arrington had seen Dr. Reddy only a "few" times between November 2010 and March 2011. (*See* R. 22.) But by July 2011, Dr. Reddy had examined Arrington every two or three months for the past nine months and provided two functional assessments related to the period relevant to Arrington's application. (*See* R. 645.) Thus, a primary reason the ALJ cited for discrediting Dr. Reddy's original opinions—that his "limited treatment" was "not supportive of a treating relationship"—no longer holds true. Similarly, Dr. Reddy's new opinion is consistent with and supported by the "longitudinal evidence of record," (R. 22) including his March 2011 opinion.

Finally, neither the ALJ nor the Commissioner identified any evidence in the record that contradicts Dr. Reddy's opinions. *See Wilkins*, 953 F.3d at 96 (finding disability determination was not supported by substantial evidence where record contained new, uncontradicted opinion from applicant's treating physician). Two state-agency psychologists opined that Arrington had no severe mental impairment, and they did not offer assessments of his mental RFC.

Significantly, neither examined Arrington or had access to his mental-health records. (*See* R. 22, 206, 216, 226, 236.) In his written opinion, the ALJ did not cite or explicitly rely on their opinions. Thus, as the ALJ implicitly recognized, their opinions were of no value.

The evidence in the record, including Dr. Reddy's findings and opinions, undermine the ALJ's original analysis and determination that Arrington's anxiety disorder was not severe. Accordingly, I find that the Commissioner's decision is not supported by substantial evidence. On remand the ALJ shall consider whether Arrington's anxiety disorder is a severe impairment and the extent to which it limits his ability to work. This analysis requires the ALJ to consider Dr. Reddy's treating-source opinions and to adequately explain the weight he thinks they deserve. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ also must give those opinions controlling weight if he finds them "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [Arrington's] case record." *Id.*; *accord Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also Wilkins*, 953 F.2d at 96 ("[A] treating physician may properly offer a retrospective opinion on the past extent of impairment. . . . An ALJ may not reject a treating physician's opinion, based on medical expertise, concerning the extent of past impairment in the absence of persuasive contrary evidence.").

B.      *Arrington's Ability to Perform Other Work*

Despite concluding that Arrington's anxiety disorder caused "no" functional limitations (R. 21–22), the ALJ incorporated into his RFC determination two limitations that are typically seen in applicants with mental impairments. (*See* R. 24.) First, the ALJ found that Arrington could perform only "simple, routine, and repetitive tasks." (*Id.*) *See, e.g.*, *Waters v. Colvin*, No. 4:12-cv-23, 2013 WL 2490185, at *1 (W.D. Va. Jun. 10, 2013) (noting that plaintiff retained

"the mental capacity for simple, routine, and repetitive tasks"). Second, the ALJ found that Arrington might be off-task for up to five percent of the workday. (*Id.*) *See, e.g.*, *Hall v. Astrue*, No. 2:10-cv-35, 2011 WL 2938081, at *12 (W.D. Va. Jul. 19, 2011) (noting that "the ALJ's mental residual functional capacity finding" restricted the plaintiff "to work that allowed him to be off-task for 15 minutes once weekly"). These limitations are inconsistent with the ALJ's determination that Arrington's anxiety did not cause any functional limitations. Furthermore, the ALJ did not explain the basis for these limitations.[9] Accordingly, I cannot find that the ALJ adequately accounted for Arrington's mental limitations in his RFC.

## IV. Conclusion

After carefully reviewing the administrative record, the parties' briefs, and the applicable law, I find that remand is appropriate in this case. First, the ALJ's severity analysis is not supported by substantial evidence in the current record, which contains new and material evidence from Arrington's treating psychiatrist. Second, although the ALJ initially found "no" functional limitations related to Arrington's anxiety disorder, he later concluded that Arrington had two limitations common in applicants with mental impairments. The ALJ did not explain the basis for those limitations. Therefore, I **RECOMMEND** that this Court **GRANT in part** and **DENY in part** Arrington's Motion for Summary Judgment (ECF No. 12), **DENY** the Commissioner's Motion for Summary Judgment (ECF No. 14), and **REMAND** the case for further administrative proceedings under sentence four of 42. U.S.C. § 405(g).

---

[9] The "off-task" limitation could very well be related to Arrington's physical impairments. It is equally plausible, however, that the limitation is related to Arrington's ability to concentrate, to stay on task during the day, or to perform simple, routine, and repetitive tasks at an acceptable pace. *See, e.g.*, *Hall*, 2011 WL 2938081, at *12; *see also* R. 545 (Dr. Reddy opining in March 2011 that Arrington was "moderately limited" in his ability to "complete a normal work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"). It is up to the ALJ to explain the basis for an RFC determination.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: May 21, 2014.

Joel C. Hoppe
United States Magistrate Judge